UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*<br><br>v.<br><br>JACOB S. ADAMS, JR.,<br><br>*Defendant.* | Crim. Action No.: 3:00-cr-00697<br><br>**MEMORANDUM<br>AND ORDER** |

This matter comes before the Court on Defendant Jacob S. Adams Jr.'s ("Defendant" or "Adams") motion for compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A). (ECF No. 176). Defendant, a prisoner serving a term of fifty-one years' imprisonment at FCI Fairton, argues that the following factors justify his immediate release from prison: (1) the elimination of stacked mandatory minimum sentencing under 18 U.S.C. § 924(c); (2) his exemplary behavior and rehabilitation in prison; and (3) the present health risk posed by COVID-19. The Court heard oral argument on October 6, 2020. For the reasons stated below, Defendant's motion is denied.

I.

In 1995 and 1996, Defendant participated in three armed bank robberies in New Jersey along with two other men – Carlton Ewell and Edward Campbell. (Presentence Report ("PSR") ¶¶ 8, 9, 13.) The three men wore black ski masks and black leather gloves, were armed with semi-automatic firearms, and used stolen vehicles to commit the crimes. (*Id.*) During the robberies, Adams took cash from the bank tellers' drawers, directed the bank manager to lead him to the vault, and brandished a firearm. (*Id.* at ¶¶ 8, 9, 10, 13.) In total, Adams – along with the other participants – stole $278,776 from the three banks. (*Id.* at ¶¶ 8, 9, 13.) He was thirty-

1

seven years old at the time of the offenses and had no prior criminal history. (*Id.* at 2; *id.* at ¶¶ 66-67.)

Adams and Ewell were tried as co-defendants. On November 27, 2002, a jury convicted Adams on three separate counts of using a firearm during the commission of a crime of violence, contrary to 18 U.S.C. § 924(c). (*Id.* at ¶¶ 1-2.) He was ultimately sentenced to a 610 month term (51 years) of imprisonment, consisting of 70 months on the bank robbery counts, to run concurrent; 60 months on the first § 924(c) count, to run consecutive; 240 months on the second § 924(c) count, to run consecutive; and 240 months on the third § 924(c) count, to run consecutive. (Opp. Br. at 7, ECF No. 177.) Defendant appealed his sentence on July 6, 2007, and the Third Circuit affirmed on September 9, 2008. (*Id.* at 7-8; *see also* ECF Nos. 146, 161.)

Defendant has been incarcerated for twenty years and is now fifty-five years old. (Moving Br. at 1, ECF No. 176.) During his time in prison, he has made impressive efforts at rehabilitation. He has held numerous employment positions and completed courses in powered industrial trucks, dental technology, Spanish language, electronic law library, computer literacy and typing, drug education, used oil management, oily rags handling & disposal, oil spill clean-up & response, career exploration, disease prevention, recycling, and food safety, among others. (Def.'s Mot. to Make Add'l Findings, ECF No. 173; *see also* Moving Br. at 17, ECF No. 176.) In addition to enhancing his professional skills, Defendant has invested in his personal development through the Prison Fellowship and Bible study, various reentry programs, and anger management and parenting classes. (*Id.*) Further, Defendant has had only one disciplinary infraction during his imprisonment – he possessed an unauthorized item in 2006. (Moving Br. at 2, ECF No. 176.)

After the First Step Act was enacted in 2018, Defendant moved *pro se* to vacate and/or reduce his sentence. (Def.'s Mot. Seeking Mod. Imposed Sen., ECF No. 168.) This Court denied that motion on January 9, 2020 because Defendant was not at least seventy years old, had not served at least thirty years of his sentence, and had not demonstrated the requisite "extraordinary and compelling reasons to warrant such a reduction." (Order Den. Def.'s Mot. Seeking Mod., ECF No. 171.) Three months later, Defendant – again representing himself – moved for the Court to make additional factual findings regarding his prior motion, and attached numerous certifications documenting his education and rehabilitative training in prison. (Def.'s Mot. Make Add'l Find'gs, ECF Nos. 172, 173.)

On April 28, 2020, Defendant submitted an internal application for compassionate release, and the warden denied the request on May 12. (Moving Br. 4, ECF No. 176.) That same month, this Court appointed Julie A. McGrain, a federal public defender, to represent Defendant. (Order Appt'g Fed. Pub. Def'r, ECF No. 174.) In June 2020, Defendant submitted an emergency motion for compassionate release through counsel. (Def.'s Moving Br., ECF No. 176.) He argued that the following three reasons, taken together, constitute "extraordinary and compelling" reasons that justify his release. (*Id.* at 1-2.)

First, Defendant argues that his sentence is unduly harsh under today's sentencing laws. When he was sentenced, he received forty-five consecutive years under 18 U.S.C. § 924(c)'s stacking provision, which was revised in 2018 to apply only to defendants who had a prior conviction under that subsection. (*Id.* at 1-2.) Because Defendant had no prior criminal history, the stacking provision would not apply to him today, and he would be serving roughly half of his current sentence. Second, Defendant highlights his excellent track record of good behavior and rehabilitation in prison, which weighs in favor of his release under the 18 U.S.C. § 3553(a)

3

factors. (*Id.* at 2; Def.'s Reply Br. 11-12, ECF No. 178.) Third, he is concerned about the spread of COVID-19 in FCI Fairton. (Moving Br. 3; Reply Br. 1-2.) He does not claim to have any medical conditions that would put him at increased risk for severe illness should he contract COVID-19.

In response, the United States first asserts that the § 924(c) revisions are not retroactive, and the relief Defendant seeks would be an "end run" around that Congressional intent. (Opp. Br. at 2, 17, ECF No. 177.) Second, it argues that a generalized concern about the spread of COVID-19 is not sufficient to grant compassionate release, and Defendant does not suffer from any particular medical condition that puts him at an increased risk. (*Id.*) Third, even if Defendant's excessive sentence warranted compassionate release, he has not demonstrated that he merits release under the 18 U.S.C. § 3553(a) factors. (*Id.* at 2-3, 17.) Specifically, (1) the Court's original sentence adequately reflects the severity of Defendant's conduct; (2) releasing him prematurely would undermine the sentence's deterrent purpose; (3) cutting his sentence nearly in half would result in a substantial variance and would be unfair to other defendants whose requests were denied despite longer time served; and (4) the Court cannot find that Defendant is no longer a danger to the community. (*Id.* at 21-23.)

Adams and the United States also disagree as a matter of law whether a court – or only the Bureau of Prisons (BOP) – may determine if "extraordinary and compelling reasons" exist for compassionate release. The United States adopts a literal interpretation of the policy statement for the compassionate release sentencing guidelines, which provides that BOP shall make that determination. (Opp. Br. 17-20.) Adams argues that language is outdated because the First Step Act now permits a defendant to move for compassionate release, even if BOP has declined to do so on his behalf. (Reply Br. 3-4, 6-7.) According to Adams, the policy statement

4

does not prohibit a court from making an independent determination of "extraordinary and compelling reasons," and sentencing decisions are more appropriately made by the courts than BOP. (Reply Br. 4.)

Finally, the United States does not dispute that Adams has exhausted his administrative remedies under the compassionate release statute, and that this Court has jurisdiction to decide the matter. Because the United States indicated during oral argument that the administrative remedies Adams has pursued are sufficient, that issue will not be reviewed in this opinion.[1]

## II.

A motion for compassionate release is considered under 18 U.S.C. § 3582(c), which governs sentence modifications. As it pertains to this case, a court may only reduce a sentence "if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission issued a policy statement for 18 U.S.C. § 3582(c)(1)(A) – last revised in November 2018 – that describes what may be considered "extraordinary and compelling reasons" for a sentence reduction. *See* U.S. Sentencing Guidelines Manual (USSG) § 1B1.13 (U.S. Sentencing Comm'n 2018) ("policy statement"); 28 U.S.C. § 994(t). It provides that a court may reduce a sentence, upon a motion from the Director of BOP, if it finds that "(1)(A) Extraordinary and compelling reasons warrant

---

[1] In order to move the Court directly for compassionate release under the First Step Act, an inmate must first submit an internal request to the warden and then either (1) wait thirty days without receiving a response, or (2) "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [his] behalf." *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (codified at 18 U.S.C. § 3582(c)(1)(A)); 28 C.F.R. § 542.10. If the warden denies his request, the inmate must appeal that decision to the Regional Director, and then to the General Counsel if he is not satisfied with the Regional Director's decision. *See* 28 C.F.R. § 542.15(a). Those regulations and procedures are described in BOP Program Statement No. 5050.50. *See Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g)*, Fed. Bureau of Prisons (Jan. 17, 2019), https://www.bop.gov/policy/progstat/5050_050_EN.pdf. Here, the United States concedes that Adams's administrative remedies were exhausted after the warden denied his internal request for compassionate release, even though he did not proceed with the BOP appeals process.

the reduction; . . . (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) The reduction is consistent with this policy statement." USSG § 1B1.13.

According to the commentary to that policy statement, the following circumstances constitute extraordinary and compelling reasons: "(A) Medical Condition of the Defendant"; "(B) Age of the Defendant"; "(C) Family Circumstances"; or "(D) Other Reasons." USSG § 1B1.13 cmt. n.1. Defendant argues he qualifies for compassionate release under subsection "D", which states that "*[a]s determined by the Director of the Bureau of Prisons*, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* (emphasis added). Notably, the Sentencing Commission has stated that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

The First Step Act, enacted in December 2018, amended § 3582(c) to permit a defendant to move for compassionate release on his own behalf after "fully exhaust[ing] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf[,] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (codified at 18 U.S.C. § 3582(c)). Previously, only BOP could submit a motion for compassionate release on behalf of an inmate. *Compare id. with* 18 U.S.C. § 3582(c)(1)(A) (2002).

The Sentencing Commission has not revised its policy statement since the First Step Act was passed; as such, the language still represents that only BOP may bring a motion for compassionate release and determine whether extraordinary and compelling reasons exist. *See* USSG § 1B1.13; USSG § 1B1.13 cmt. n.1(D). Courts have disagreed whether, in light of the

First Step Act, a court may independently evaluate whether extraordinary and compelling reasons for compassionate release are present. *United States v. Clausen*, No. CR 00-291-2, 2020 WL 4260795 (E.D. Pa. July 24, 2020). *Compare, e.g., United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) (finding that "the dependence on the BOP to determine the existence of an extraordinary and compelling reason, like the requirement for a motion by the BOP Director, is a relic of the prior procedure that is inconsistent with the amendments implemented by the First Step Act") *with United States v. Strain*, No. 3:97-CR-00004-TMB, 2020 WL 1977114, *4 (D. Alaska Apr. 24, 2020) ("Nothing in the First Step Act nullifies, amends, or expressly contradicts the definition of 'extraordinary and compelling reasons' provided by U.S.S.G. § 1B1.13. Thus . . . district courts may only grant compassionate release where consistent with U.S.S.G. § 1B1.13 as written.") While the circuit courts have yet to address this issue, the majority of district courts have held that the portions of the policy statement that reference BOP's exclusive authority are inapplicable, and that a court may independently assess whether extraordinary and compelling reasons are present under USSG § 1B1.13 cmt. n.1(D). *United States v. Pollard*, No. CR 10-633-1, 2020 WL 4674126, at *4-5 (E.D. Pa. Aug. 12, 2020) (noting that "the most recently enacted statute receives preference over the older one" and "Congress can and does override the Commission's policy statements by statute"); *Clausen*, 2020 WL 4260795, at *4; *United States v. McDonald*, No. CR 09-656 (SDW), 2020 WL 3638280, at *4 n.5 (D.N.J. July 2, 2020); *United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *4 (E.D. Pa. Apr. 1, 2020); *Young*, 2020 WL 1047815, at *6.[2]

---

[2] In March 2020, the Tenth Circuit upheld a district court's decision to deny compassionate release because the defendant did not "establish[] extraordinary and compelling reasons justifying a sentence reduction." *United States v. Saldana*, 807 F. App'x 816, 819-20 (10th Cir. 2020). It applied the USSG § 1B1.13 policy statement but did not

7

The First Step Act also changed mandatory minimum sentencing under 18 U.S.C. § 924(c). When Defendant was sentenced, § 924(c) contained a "stacking" provision which required consecutive sentences for each conviction in which a defendant used a firearm during the commission of a crime of violence – even when both convictions were from the same indictment. 18 U.S.C. § 924(c)(1)(A)(C) (2006). The First Step Act revised that provision to require stacked sentences only "after a prior conviction under this subsection has become final." 18 U.S.C. § 924(c)(1)(A)(C). Congress did not intend that amendment to be retroactive, but rather, to "apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." First Step Act § 403, 132 Stat. at 5221-22; *see also United States v. Hodge*, 948 F.3d 160, 162-63 (3d Cir. 2020).

Nevertheless, many courts have considered an excessive sentence under § 924(c)'s former stacking provision as one factor in their assessment of whether extraordinary and compelling reasons for compassionate release exist. *See, e.g., Pollard*, 2020 WL 4674126; *United States v. Haynes*, No. 93 CR 1043, 2020 WL 1941478 (E.D.N.Y. Apr. 22, 2020); *United States v. O'Bryan*, No. 96-10076-03-JTM, 2020 WL 869475 (D. Kan. Feb. 21, 2020); *United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121 (D. Utah Feb. 18, 2020); *United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391 (D. Neb. Nov. 14, 2019).

Indeed, some courts have found that a defendant's rehabilitation combined with an excessive sentence under § 924(c)'s former stacking provision can constitute extraordinary and compelling reasons justifying compassionate release. *See, e.g., Pollard*, 2020 WL 4674126, at *7 (finding extraordinary and compelling circumstances based on "the dramatic difference in the

---

discuss whether, in light of the First Step Act, the "extraordinary and compelling reasons" determination should be made by BOP or a court. *Id.*

8

sentence Pollard would face if charged today, the evidence of rehabilitation and productive use of time while incarcerated, his stated plans for gainful employment upon release, and his lack of a prior criminal history); *Clausen*, 2020 WL 4260795; *United States v. Quinn*, No. 91CR00608DLJ1RS, 2020 WL 3275736 (N.D. Cal. June 17, 2020); *U.S.A. v. Defendant(s)*, No. 2:99-CR-00257-CAS-3, 2020 WL 1864906 (C.D. Cal. Apr. 13, 2020); *Young*, 2020 WL 1047815. *But see United States v. Andrews*, No. CR 05-280-02, 2020 WL 4812626 (E.D. Pa. Aug. 19, 2020) (court denied compassionate release despite defendant's 14 years served, rehabilitation, concern about COVID-19 due to his hypertension, and the § 924(c) amendment where defendant was serving 312-year sentence); *United States v. Brown*, 411 F. Supp. 3d 446 (S.D. Iowa 2019), *order amended on reconsideration*, No. 4:05-CR-00227-1, 2020 WL 2091802 (S.D. Iowa Apr. 29, 2020) (finding that even if First Step Act applied retroactively, and despite defendant's rehabilitation, his motion was premature because he would have served only 167 months of a 210-month sentence under today's sentencing laws). Others have declined to reduce a sentence based on the First Step Act's 2018 amendment because it is not retroactive. *See, e.g., United States v. Norwood*, No. CR 96-232 (RBK), 2020 WL 3481765, at *2 (D.N.J. June 26, 2020); *Strain*, 2020 WL 1977114, at *4; *United States v. Pitts*, No. 6:94-CR-70068-2, 2020 WL 1676365, at *5 (W.D. Va. Apr. 6, 2020). While the Third Circuit has not directly addressed this issue, it held that a defendant was not eligible for a sentencing reduction based on an amendment to the USSG because the Commission did not make that amendment retroactive. *United States v. Handerhan*, 789 F. App'x 924, 926-27 (3d Cir. 2019).

Even if extraordinary and compelling circumstances for compassionate release are present, a court may deny the requested relief if the 18 U.S.C. § 3553(a) factors do not weigh in favor of the defendant's release. *See, e.g., United States v. Pawlowski*, 967 F.3d 327 (3d Cir.

9

2020) (holding that although defendant had medical problems that justified compassionate release due to COVID-19, he had served only 2 years of a 15-year sentence, and his crimes of fraud, conspiracy, and lying to the FBI required a significant period of incarceration). Those factors are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, afford adequate deterrence, and protect the public from further crimes by the defendant; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)(1)-(7).

Finally, the Third Circuit has held that "the mere existence of COVID-19 in society and the possibility that it may spread . . . cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). As such, an inmate typically must show that he has a medical condition that puts him at increased risk for severe illness or complications from COVID-19.[3] *See, e.g., Rodriguez*, 2020 WL 1627331. And courts have denied relief to inmates with such conditions if BOP is meeting their medical needs and has reasonable measures in place to prevent the spread of the virus. *See, e.g., United States v. Moore*, No. CR 19-101, 2020 WL 4282747 (D.N.J. July 27, 2020); *United States v. Alexander*, No. CV 19-32, 2020 WL 2507778 (D.N.J. May 15, 2020); *United States v. Sellers*, No. CR 10-434, 2020 WL 1972862 (D.N.J. Apr. 24, 2020).

### III.

---

[3] The CDC maintains a list of medical conditions that put individuals at an increased risk for severe illness from COVID-19. *People with Certain Medical Conditions*, CDC: Your Health, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Sept. 30, 2020).

As an initial matter, the Court must consider whether it has authority to find that extraordinary and compelling reasons justify reducing Defendant's sentence. USSG § 1B1.13. The First Step Act changed prior practice to allow a defendant to move for compassionate release after (1) fully exhausting administrative appeals of BOP's refusal to do so on his behalf, or (2) thirty days have passed without a response from the warden. 18 U.S.C. § 3582(c)(1)(A); *Rodriguez*, 2020 WL 1627331, at *3. As such, the sections of the policy statement that reference BOP's exclusive authority in compassionate release matters is inapplicable today. It would be illogical to hold that only BOP may determine whether extraordinary and compelling reasons exist even when BOP has declined or not responded to an inmate's request for compassionate release. It would also undermine the intent behind the First Step Act, which aimed to expedite compassionate release applications by providing inmates direct access to the courts under certain conditions. *Rodriguez*, 2020 WL 1627331, at *5. Therefore, this Court agrees with the majority of other district courts that BOP no longer has exclusive authority to determine whether extraordinary and compelling reasons warrant a sentence reduction.

The next inquiry is whether Defendant's circumstances are indeed extraordinary and compelling such that they justify his release. The three reasons asserted by Defendant are: (1) his unduly harsh sentence, which would be drastically shorter if he were sentenced under § 924(c) today; (2) his rehabilitation and excellent behavior in prison; and (3) his concern about the spread of COVID-19 in his detention facility.

First, because Defendant had no criminal history at the time of the offense, he would not have been subject to the stacking requirement under the present-day § 924(c). Instead of receiving a 51-year sentence, he would likely have been sentenced to approximately 27 years: 70 months for the bank robbery convictions plus 21 years for brandishing a firearm while

committing a crime of violence (7 years for each of the 3 counts).[4] 18 U.S.C. § 924(c)(1)(A)(ii); (Opp. Br. 23). As such, his sentence is roughly twice the length that it would be if he were sentenced under § 924(c) today. Because the First Step Act's revision to § 924(c) is not retroactive, it would be improper to grant a sentence reduction on that ground alone. Some courts in our circuit have found that a lengthy sentence under § 924(c)'s former stacking provision, combined with rehabilitation, can constitute extraordinary and compelling reasons under 18 U.S.C. § 3582(c)(1)(A)(i), while others have declined to reduce a sentence on those grounds. *Compare, e.g., Pollard*, 2020 WL 4674126 and *Clausen*, 2020 WL 4260795 *with Andrews*, 2020 WL 4812626 and *Norwood*, 2020 WL 3481765.

Absent guidelines from the Sentencing Commission or a decision by the circuit courts, this Court finds that the great disparity between Defendant's sentences before and after the elimination of the § 924(c) stacking provision is one factor that may be considered to determine whether his circumstances are extraordinary and compelling. Indeed, had Defendant served 27 years – his probable sentence under the present-day § 924(c) – the Court may consider his argument more persuasive. However, if this Court were to release Defendant after 20 years served, it would need to reduce Defendant's sentence by 7 years – roughly 25%. The Court finds that the § 3553(a) factors weigh against such a significant reduction here. Defendant used a firearm to threaten and intimidate bank employees in order to steal hundreds of thousands of dollars on numerous occasions. While it is fortunate that no one was injured, these violent acts created a serious risk of harm to innocent people. The need to deter such crimes and protect the

---

[4] At the time Defendant was sentenced, 18 U.S.C. § 924(c) did not have enhanced penalties for brandishing a firearm during the commission of a crime of violence. The statute was later revised to require "a term of imprisonment of not less than 7 years" if a firearm is brandished. (Opp. Br. 23.)

public require that Defendant serve the full sentence he would have received had he been sentenced after § 924(c) was amended.

Finally, Defendant's COVID-19 argument is not availing because he has presented no evidence of an underlying medical condition, and a generalized concern about COVID-19 is insufficient to justify compassionate release. *See Raia*, 954 F.3d at 597; *United States v. Falci*, No. CR 17-228, 2020 WL 3410914, at *5 (D.N.J. June 22, 2020); *United States v. Alexander*, No. CV 19-32 (FLW), 2020 WL 2507778, at *4-5 (D.N.J. May 15, 2020). Further, Defendant has not asserted that the measures being taken to prevent the spread of the virus in FCI Fairton are unreasonable. *See Alexander*, 2020 WL 2507778, at *5; *Sellers*, 2020 WL 1972862, at *1-2. While there have been at least one hundred cases at the facility, it appears that the vast majority of inmates and staff have recovered, none have died, and only a small number of active cases remain. *COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited October 6, 2020). Therefore, this Court does not consider the presence of COVID-19 to be an extraordinary or compelling reason in favor of Defendant's release.

## ORDER

**THIS MATTER** having come before the Court on Defendant Jacob S. Adams Jr.'s Motion for Compassionate Release, (ECF No. 176); and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented; and for good cause shown; and for all of the foregoing reasons;

**IT IS** on this 14 day of October, 2020,

**ORDERED** that Defendant's motion for compassionate release, (ECF No. 176), is **denied**.

SO ORDERED: *[signature]*
DATED: 10/14/2020